UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-cr-00017-RLY-CMM |
| | ) | |
| ELMER FLOYD WIMAN, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Compassionate Release**

Defendant Elmer Floyd Wiman filed a motion for compassionate release under § 603 of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 144. The Court appointed counsel to represent Mr. Wiman, dkt. 145, and counsel filed a supporting memorandum, dkt. 150. Mr. Wiman asks the Court to reduce his sentence to time served and to immediately release him. *Id.* The United States responded in opposition, dkt. 152, and Mr. Wiman replied, dkt. 153.

The Court then ordered Mr. Wiman to show cause why his motion should not be denied because the COVID-19 pandemic no longer represents an extraordinary and compelling reason warranting release. Dkt. 154. In his response to the show-cause Order, Mr. Wiman contended that his health had deteriorated substantially since the filing of his reply, thereby strengthening his arguments for compassionate release. Dkt. 155. At the Court's direction, the United States filed a supplemental response addressing the changes to Mr. Wiman's medical condition. Dkt. 157. Thus, the motion for compassionate release is ripe for the Court's consideration. For the reasons explained in this Entry, the motion is **granted**.

# I. Background

A.  *Conviction and Sentencing*

In 2016, the Court[1] sentenced Mr. Wiman to an aggregate sentence of 110 months of imprisonment after a jury found him guilty of: (1) robbery of a credit union, in violation of 18 U.S.C. § 2113(a) (Count 1); (2) carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 3). Dkt. 114. The sentence consisted of concurrent 50-month sentences for Counts 1 and 3 and a mandatory, consecutive 60-month sentence for Count 2. *Id.* The Court also imposed 3 years of supervised release. *Id.*

The Presentence Investigation Report sets out the following offense conduct:

In March 2015, Mr. Wiman was 66 years old and serving a term of supervised release for a previous federal conviction for being a felon in possession of a firearm. *See* dkt. 98 at 3, 12. On March 17, 2015, Mr. Wiman robbed a credit union. *Id.* at 4. He was armed with a handgun and demanded that the tellers place the credit union's money into a cooler. *Id.* When he was arrested, law enforcement officers found $3,091 and the cooler in his car. *Id.*

Mr. Wiman had a significant criminal history, including: (1) a 1972 conviction for armed robbery; (2) 6 convictions for burglary or attempted burglary (4 convictions in 1981 and 2 in 1990); (3) a 1981 conviction for attempted escape; (4) a 1983 conviction for robbery; (5) a 1990 conviction for escape; and (6) a 1994 conviction for being a felon in possession of a firearm. *Id.* at 6–11. Based on a total offense level of 22 and a criminal history category of III, his imprisonment range under the sentencing guidelines was 51 to 63 months. *Id.* at 18. As explained above, Count 3 also required a 60-month term of imprisonment, to be imposed consecutively to any other term

---

[1] The undersigned did not sentence Mr. Wiman. The undersigned was assigned to this case during the pendency of Mr. Wiman's direct appeal. *See* dkt. 133.

of imprisonment. *Id.* The Court ultimately sentenced Mr. Wiman to an aggregate sentence of 110 months of imprisonment, plus 3 years of supervised release. Dkt. 114.

B.      *Current Incarceration*

Mr. Wiman is now 73 years old. He is currently incarcerated at FMC Devens. He has been in custody since his arrest in March 2015—that is, he has been in custody for about 6-and-a-half years. The Bureau of Prisons ("BOP") lists Mr. Wiman's anticipated release date (with good-conduct time included) as July 27, 2025. *See* https://www.bop.gov/inmateloc/ (last visited Sept. 20, 2021).

As of June 11, 2020, the BOP has rated Mr. Wiman as presenting a low risk of recidivism. Dkt. 150-3. Although Mr. Wiman received two disciplinary write-ups during a previous stint in the BOP, he has maintained a clean disciplinary record since his sentencing in this case. Dkt. 150-5.

C.      *COVID-19 Infection and Vaccination*

Mr. Wiman tested positive for COVID-19 in January 2021. Dkt. 152-4 at 4. He appears to have remained asymptomatic following his positive test. *See generally* dkt. 152-2.

Mr. Wiman received the first dose of the Moderna COVID-19 vaccine on March 2, 2021. Dkt. 155-1 at 115. He received the second dose of the vaccine on March 30, 2021. *Id.*

D.      *Medical Conditions*

Mr. Wiman has been diagnosed with Parkinson's disease and Parkinson's dementia. Dkt. 155-1 at 6. When he filed his motion for compassionate release, he was housed at FCI Greenville. In May 2021, however, he was transferred to a memory disorder unit at FMC Devens. *Id.* at 150, 163–68, 182. At the time of his transfer, medical staff noted that he could shower independently but required cuing. *Id.* at 179. Notes from his intake assessment reflect that his speech was low

and garbled at times; his gait was very shuffled; and he had a history of falling. *Id.* at 162, 165. Two days after his arrival, a medical staff member assessed Mr. Wiman and noted that he needed assistance ambulating to the shower and physical therapy, did not know his age, and could not recall the date within the month, the day of the week, or the year. *Id.* at 150. Four days after that, medical staff noted that Mr. Wiman required assistance to complete activities of daily living and required meal set up and prompting to sleep in his bed. *Id.* at 139. He had been placed on quarantine as a precaution following his transfer, but he was released from quarantine early because he was becoming agitated and was decompensating. *Id.* at 132, 135.

Over the last four months, Mr. Wiman has continued to experience problems with his gait and with balance. *See id.* at 22, 23, 25, 32, 35, 36, 40, 41, 46, 47, 52, 57, 62, 118, 123, 132. He has fallen multiple times. *Id.* at 13, 38, 49, 54, 59, 70, 79, 87. On multiple occasions, medical staff have observed that he was not oriented to place or time or that he was confused. *Id.* at 4, 18, 29, 115, 121. He has reported visual hallucinations. *Id.* at 121. On July 20, 2021, medical staff reported that Mr. Wiman (incorrectly) believed that people were outside his cell accusing him of touching a child and that he had placed a bar of soap in a sock so that he could protect himself. *Id.* at 18. One day later, medical staff reported that Mr. Wiman did not want to come out of his cell for breakfast because the officers were "poisoning that little girl's brain" and "telling that little girl lies about me." *Id.* at 17. As of August 10, 2021, medical records show that Mr. Wiman uses a walker and requires assistance with his activities of daily living. *Id.* at 1.

  E.  *Release Plans*

Upon his release, Mr. Wiman plans to live with his sister—Connie Cogswell—in Bridgeport, Illinois. Dkt. 150 at 2, 17. Counsel represents that she has spoken with Ms. Cogswell and that Ms. Cogswell has confirmed that Mr. Wiman can live with her if released. *Id.* at 17 n.1.

Counsel also represents that Ms. Cogswell is employed full time at a Toyota plant and will support Mr. Wiman financially. *Id.* at 17. Counsel also represents that Mr. Wiman has the support of his two other sisters. *Id.*

## II. Legal Standard

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall

provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

### III. Discussion

Mr. Wiman contends that "extraordinary and compelling reasons" support a sentence reduction in his case within the meaning of § 3582(c)(1)(A)(i) because: (1) he suffers from medical conditions that increase his risk of experiencing severe symptoms if he contracts COVID-19 again; and (2) his medical conditions substantially limit his ability to provide self-care in a prison setting. *See, e.g.*, dkt. 155. He further argues that a reduction of his sentence would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. Dkt. 150 at 14–19; dkt. 155 at 7–10.

In response, the United States does not dispute that Mr. Wiman has exhausted his administrative remedies as required by § 3582(c)(1)(A). *See generally* dkt. 152. It argues, however, that Mr. Wiman has not shown extraordinary and compelling reasons warranting release because he has been vaccinated against COVID-19, FMC Devens is a safe place that can provide Mr. Wiman with the care he needs, and he has not set forth an acceptable release plan. Dkt. 157.[2] It also argues that Mr. Wiman would present a danger to the community if released and that the sentencing factors in § 3553(a) do not favor release. *Id.*

---

[2] In its initial response brief, the United States also argued that Mr. Wiman had not shown extraordinary and compelling reasons warranting release because he did not have a terminal illness and he was not substantially diminished in his ability to provide self-care in a correctional facility. *See* dkt. 152 at 13. As to the latter point, the United States relied on a medical evaluation performed by BOP staff in 2019. *Id.* When directed to respond to Mr. Wiman's arguments about the deterioration of his health during 2021, the United States did not renew its argument that Mr. Wiman's condition is not terminal or its argument that he is not substantially limited in the ability to provide self-care in a correctional facility. *See generally* dkt. 157. Thus, the Court considers those arguments abandoned. To the extent the United States has not abandoned them, the Court notes that Mr. Wiman's condition has deteriorated significantly in recent months and that a 2019 medical assessment is not helpful to determining whether Mr. Wiman currently lacks the ability to provide self-care.

    A.    *Extraordinary and Compelling Reasons*

The Court concludes that Mr. Wiman has shown extraordinary and compelling reasons warranting release in this case.³ At the outset, the Court notes that the possibility that Mr. Wiman might be reinfected with COVID-19 does not constitute an extraordinary and compelling reason warranting release because he has now been fully vaccinated against the virus. *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-03, dkt. 274 (S.D. Ind. Feb. 16, 2021); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). That conclusion does not, however, end the analysis because Mr. Wiman relies on more than just his risk of being reinfected with COVID-19. He also contends that extraordinary and compelling reasons support his release because his medical conditions limit his ability to provide self-care in the prison environment, and he is not expected to recover from those conditions. The Court agrees.⁴

---

³ In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court would typically consider the rationale provided by Mr. Wiman's warden in denying Mr. Wiman's administrative request for relief. In this case, the warden denied Mr. Wiman's administrative request because he could adequately function in a correctional institution. *See* dkt. 150-6. That determination was made, however, in September 2019, and was not based on Mr. Wiman's current condition. Thus, it offers little guidance for the Court.

⁴ Mr. Wiman argues that his circumstances qualify as "extraordinary and compelling" under Application Note 1(A)(ii)(I) to the policy statement in U.S.S.G. § 1B1.13 because he suffers from a serious medical condition that substantially diminishes his ability to provide self-care in the prison environment and from which he is not expected to recover. Dkt. 150 at 7–8. The Court need not decide whether Mr. Wiman meets the strict requirements of this provision because the Court is not bound by the policy statement and possesses broad discretion to determine what qualifies as "extraordinary and compelling" under § 3582(c)(1)(A)(i). *See Gunn*, 980 F.3d at 1180–81.

Mr. Wiman is 73 years old. He has been diagnosed with Parkinson's disease and Parkinson's dementia. Those conditions are progressing, and he has recently been transferred to a federal medical center so that he can reside in a memory disorder unit. Over the past several months, his medical records show that he has ongoing gait problems and has fallen multiple times despite using a walker. BOP medical staff also report that Mr. Wiman requires assistance with activities of daily living. Finally, BOP medical staff report that Mr. Wiman is occasionally confused.

Importantly, Parkinson's disease is a progressive disorder that cannot be cured. *See* https://www.mayoclinic.org/diseases-conditions/parkinsons-disease/symptoms-causes/syc-20376055 (last visited Sept. 20, 2021). While medications can improve symptoms, those symptoms worsen as the condition progresses over time. *Id.* That is, there is no reason to believe that Mr. Wiman's condition will improve. To the contrary, it will likely continue to deteriorate.

The United States does not dispute any of these facts. Instead, it argues that FMC Devens is a safe place that can provide care for Mr. Wiman and that his release plan is not viable because he requires specialized care. *See* dkt. 157. Such facts are relevant to the Court's analysis of the § 3553(a) factors, but they do not impact its analysis of whether Mr. Wiman has shown extraordinary and compelling reasons warranting release within the meaning of § 3582(c)(1)(A)(i). On that point, Mr. Wiman's ability to function in the prison environment is seriously compromised, and there is no realistic prospect that he will recover. In these circumstances, extraordinary and compelling reasons support a reduction in sentence. *Cf. United States v. McGraw*, No. 2:20-cr-18-JMS-CMM-01, dkt. 88 (S.D. Ind. May 9, 2019); *United States v. Meriwether*, No. 3:12-cr-4-RLY-CMM-01, dkt. 173 (S.D. July 9, 2020).

B.      *Danger to any Other Person or the Community*

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Wiman's crime was serious. He robbed a credit union. And he did so while on supervised release for another federal conviction. He was 66 years old at the time of the robbery, suggesting that he is not an offender who "aged out" of crime. Mr. Wiman's criminal history is also lengthy and serious. The Court finds, however, that Mr. Wiman's release from incarceration to his 3-year term of supervised release would not threaten the safety of any person or the general

11

public. At this point, Mr. Wiman is 73 years old and suffers from Parkinson's disease—a serious and progressive disease. In recent months, his condition has deteriorated to the point that he requires assistance with activities of daily living and is occasionally confused. Tellingly, even the BOP considers him to present a low risk of recidivism.

Upon release, Mr. Wiman plans to live with his sister, who will provide him with housing and financial support. His other sisters have expressed their support. The support of his family and the potential for financial stability should help Mr. Wiman transition back to being a law-abiding member of the community.

Based on these facts, pursuant to § 3142(g), the Court finds that Mr. Wiman does not presently pose a danger to any person or the community if his sentence is reduced to time served.

C.     *Section 3553(a) Factors*

Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for--
> > **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]

> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Wiman's conduct in this case was serious, and his criminal history is concerning. In addition, he still has about 4 years remaining on his sentence. But Mr. Wiman has been incarcerated for more than 6 years, representing a substantial sanction that appropriately recognizes the seriousness of his conduct. He has maintained clean conduct over the past 6 years. Moreover—and most importantly—he suffers from debilitating medical conditions that have reduced his ability to function in the correctional setting and have made his 6 years in prison more grueling than they would otherwise have been. His health has deteriorated significantly in recent months, and it is likely to continue to deteriorate. On the facts of this case, further incarceration would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).

When viewed in light of Mr. Wiman's worsening health and assuming that an appropriate release plan can be developed for him, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Wiman's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, keeping Mr. Wiman incarcerated any longer would be more than what is necessary to provide just punishment for Mr. Wiman's offenses.

As explained, the United States expresses concern that Mr. Wiman has failed to present a viable release plan. It notes that Mr. Wiman is receiving specialized care at FMC Devens and that his family members may not be able to provide adequate care for him. Given Mr. Wiman's particular medical challenges and his need for specialized care, the Court shares the United States' concern about developing an appropriate release plan for Mr. Wiman. As a result, and as detailed below, the Court will stay execution of its decision for up to 28 days so that the United States Probation Office ("USPO") can ensure that Mr. Wiman has a release plan that adequately accounts for his need for medical care.

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Wiman's sentence to time served, that Mr. Wiman does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Wiman's motion for compassionate release, dkt. [144], and **ORDERS** that Mr. Wiman's sentence of imprisonment be reduced to **time served.** The term of supervised release remains 3 years. The terms of supervised release stated in the Amended Judgment docketed on November 17, 2016, dkt. 114, remain the same with the addition of the following condition: Mr. Wiman is ordered to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

Execution of this decision is stayed for up to **28 days**, for the verification or establishment of a release plan that adequately accounts for his need for medical care; to transfer Mr. Wiman's supervision to another district, if necessary; to make appropriate travel arrangements; and to ensure

Mr. Wiman's safe release. The BOP shall release Mr. Wiman as soon as a residence is verified; a release plan is established that adequately accounts for Mr. Wiman's need for medical care; appropriate travel arrangements are made; his supervision is transferred to another district, if necessary; and it is safe for Mr. Wiman to travel. There shall be no delay in ensuring travel arrangements are made. If more than 28 days are needed to develop a release plan, make appropriate travel arrangements, transfer his supervision (if necessary), and ensure Mr. Wiman's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended. Likewise, if USPO is unable to develop a viable release plan for Mr. Wiman despite making good-faith efforts to do so, the United States shall immediately notify the Court and explain why a viable release plan cannot be developed.

No later than **12:00 p.m. on September 23, 2021**, counsel for the United States is **ordered** to do the following: (1) transmit the contemporaneously filed AO248 Order to Mr. Wiman's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

**IT IS SO ORDERED.**

Date:   9/22/2021

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel
Bob Akers
United States Probation Office
46 East Ohio St. #101
Indianapolis, IN  46204